AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
12/1/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ____ KM ____ DEPTUTY

# UNITED STATES DISTRICT COURT

**FILED**
CLERK, U.S. DISTRICT COURT
12/1/2025
CENTRAL DISTRICT OF CALIFORNIA
BY: ____ IV ____ DEPUTY

for the

Central District of California

United States of America

v.

LUIS ANTONIO CRUZ-DIEGO,

Defendant.

Case No.   2:25-MJ-07480-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of November 13, 2025, in the county of Los Angeles in the Central District of California,

the defendant violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 922(g)(5)(A) | Alien in Possession of a Firearm and Ammunition |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

*/s/ Wayne Lai*
Complainant's signature

Wayne Lai, Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:   12/01/2025

Judge's signature

City and state:  Los Angeles, California

Hon. Patricia Donahue, U.S. Magistrate Judge
Printed name and title

AUSA:  Patrick Kibbe, x6482

## AFFIDAVIT

I, Wayne Lai, being duly sworn, declare and state as follows:

### I.   PURPOSE OF AFFIDAVIT

1.   I make this affidavit in support of a complaint against, and arrest warrant for, Luis Antonio CRUZ-Diego ("Defendant") for a violation of 18 U.S.C. § 922(g)(5)(A): Alien in Possession of a Firearm and Ammunition.

2.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and arrest warrant and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically stated otherwise, all conversations and statements described in this affidavit are related in substance and in part only,and all dates and times are on or about those indicated.

### II.   BACKGROUND OF AFFIANT

3.   I am a Homeland Security Investigations ("HSI") Special Agent ("SA") and have been employed as such since December 30, 2024.  I am authorized by Title 8, United States Code, Section 1357, and Title 19, United States Code, Section

1589a, to investigate violations of immigration law and customs law violations; and to investigate federal felonies and misdemeanors, codified under Title 18, United States Code, committed in the presence of a government officer or employee.

4.   I completed approximately six months of training at the Federal Law Enforcement Training Centers, where I completed the Criminal Investigator Training Program and HSI Special Agent Training Program.  I was trained in conducting criminal investigations and received comprehensive and formalized instruction of financial crime, money laundering, drug trafficking, drug smuggling, human trafficking, street gangs, trade fraud, seizure, and forfeiture.

5.   I am currently assigned the Integrated Operations Group ("IOG").  As part of this task force, I investigate various federal crimes with Department of Homeland Security ("DHS") agents and analysts, including from HSI and Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations.  I am familiar with DHS databases that are used to identify individuals who are subject to prosecution for federal crimes.

### III.  STATEMENT OF PROBABLE CAUSE

6.   Based on my review of law enforcement reports, conversations with other law enforcement officers and agents,

and my own knowledge of this investigation, I know the following:

   A. **CRUZ-Diego Is Found in Possession of a Firearm and**
      **Ammunition**

   7.   On November 13, 2025, the Los Angeles Police Department ("LAPD") responded to a call of "shots fired" in the area of the intersection of Valencia Street and Cambria Street in Los Angeles, California.  The description of the suspect was provided as a Hispanic male wearing a beige hat and black shirt by a red vehicle.

   8.   LAPD officers arrived at the scene and were met by a witness ("Witness-1"), who was in front of the parking lot located at 719 Valencia Street ("the Lot").  The Lot is an open-air parking lot, fenced on all sides.  Witness-1 said that she was in the Lot when she observed a Hispanic male, later identified as the defendant, attempting to enter a red Toyota Rav-4.  Witness-1 said the suspect was with two other unknown males.  Witness-1 observed the suspect take out a handgun through the driver's vehicle window and fire one shot in the sky.  Witness-1 directed the officers to the Lot to find the suspect.

   9.   The officers assembled a team to conduct a systematic search of the Lot and encountered an individual who matched the

description of the suspect, later identified as the defendant. Officers took the defendant into custody.

10.  A search of the defendant's person yielded three live rounds of .40 caliber Winchester ammunition from his front left pants pocket, two live rounds of .40 caliber Winchester ammunition from his front right pants pocket, and one live round of .40 caliber Winchester ammunition from rear left pants pocket.

11.  Officers spoke with three other witnesses ("Witness-2," "Witness-3," and "Witness-4").

12.  Witness-2 told officers that he observed the defendant open the passenger door of a black Chevrolet Cruze within the Lot.  LAPD Officers located that vehicle and discovered a Ruger model P91DC, .40 caliber pistol bearing serial number 340-27680 under the right rear wheel.

13.  Witness-3 and Witness-4 both stated that they observed the defendant in possession of a firearm before turning away.[1] After hearing a single gunshot, they immediately turned back towards the defendant and saw him still in possession of a firearm, which was pointed toward the sky.

---

[1] Witness-3 described the suspect as a Hispanic male wearing a black shirt and a black hat.  Witness-4 described the suspect as a Hispanic male wearing a black shirt and a beige hat, consistent with the 911 call.

14.  Officers conducted a search of the Lot and recovered a spent .40 caliber shell casing, the same caliber as the Ruger firearm recovered and the Winchester ammunition found in the defendant's pockets.

## IV.  TRAINING AND EXPERIENCE REGARDING FINGERPRINTS AND DHS DATABASES

15.  Based on my training and experience and communication with DHS employees, I know the following:

a.  Every person has a unique set of fingerprints.  I also know that unique identification numbers - including, but not limited to, Fingerprint Identification Number System ("FINS") numbers and Federal Bureau of Investigation ("FBI") numbers – can be assigned to a person's fingerprints, thereby distinguishing that person's fingerprints in law enforcement databases from another person's fingerprints.  In many cases, the Department of Homeland Security ("DHS") and other government agencies utilize FINS and FBI numbers to associate unique fingerprint records and information to a specific individual.

b.  Moreover, when a person is fingerprinted by DHS agencies, such as ICE (formerly INS), those unique fingerprint identifiers are associated with an individual's unique alien number ("A-number") and alien file ("A-file").  An A-file typically contains official documentation regarding a person's deportation or removal history as well as alienage.  That A-file

is maintained in DHS custody, and documents and information from that A-file are uploaded to official DHS databases that can be accessed to determine, among other things, whether a person has been removed or deported from the United States, whether that person is a foreign national, and whether that person has been lawfully admitted to the United States, pursuant to, for example, a non-immigrant visa.

16.  Generally, after an arrest for a criminal offense, a person's biometric fingerprint information is obtained and enrolled into a nationwide repository for criminal history records as part of a normal booking process.  That information is then associated with a unique identification number for the person's fingerprints, typically the FBI number, which is searchable within various law enforcement indices and comparable with other government records, including those belonging to DHS and those associated with an A-file and A-number.  A match between fingerprint identifiers can therefore be used to confirm the identity of a person associated with specific records, including immigration records indicating whether that person is amenable to immigration enforcement action.

**V.   CRUZ-Diego Is an Alien Without Lawful Status**

17.  On or about November 18, 2025, I conferred with other law enforcement officers, including DHS personnel, and reviewed records associated with the defendant's unique fingerprint

identifiers that are contained in DHS indices.  I learned the following about the defendant's immigration history:

18.  The defendant is a citizen and national of Guatemala. On or about July 12, 2014, the defendant was encountered and apprehended by Border Patrol agents for entering the United States illegally from Mexico, near Douglas, Arizona.  The defendant was arrested and transported to the Tucson Coordination Center for processing.  The defendant's biographical information was collected during processing.

19.  During post-arrest processing following the July 2014 arrest, the defendant stated, in sum and substance, that he does not have the legal documentation to enter, pass through, or remain in the United States.  The defendant admitted that he knew he had entered the United States illegally, and he entered without being inspected by an immigration officer.

20.  On or about July 12, 2014, the defendant was administratively processed for removal from the United States to Guatemala.  The defendant was charged as an Inadmissible Alien under Title 8 Section 1182; and an Immigrant without an immigrant visa under Title 8 section 212(a)(7)(a)(i)(1).

21.  On or about July 14, 2014, the defendant was ordered removed from the United States to Guatemala.  On or about July 25, 2014, the defendant was removed from the United States to Guatemala through the Phoenix, Arizona port of entry.

## VI.    Defendant's Firearm and Ammunition Had Interstate Nexus

22.    On or about November 18, 2025, Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF) SA Gabriel Denton, an ATF Interstate Nexus Expert, examined the foregoing firearm and ammunition, namely, a Ruger model P91DC, .40 caliber pistol bearing serial number 340-27680 and six rounds of .40 caliber Winchester ammunition found on the defendant's person.  The recovered Ruger firearm and Winchester ammunition were all manufactured outside the state of California.  For these items to have been recovered within the state of California, they all must have traveled in and/or affected interstate and/or foreign commerce.

## VII. Defendant's Identification Confirmed

23.    In addition to the fingerprint identification described above, on or about November 18, 2025, I reviewed the booking photograph of the defendant from the arrest on November 13, 2025 and the photograph from the DHS database obtained by immigration agents during the encounter on July 13, 2014.  After reviewing the photographs, I concluded that the individual from the two sources were the same individual.  Below are the images, on the left is the defendant's November 2025 booking photo and on the right is the photo from the DHS database.

 

## VIII. <u>CONCLUSION</u>

24.  For the foregoing reasons, there is probable cause to believe that the defendant has committed a violation of 18 U.S.C. § 922(g)(5)(A): Alien in Possession of a Firearm and Ammunition.

/s/
_____
Special Agent Wayne Lai
Homeland Security Investigations

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this _1st_ day of
December 2025.

_Patricia Donahue_
_____
HONORABLE PATRICIA DONAHUE
UNITED STATES MAGISTRATE JUDGE